## H. V. SCHINTZ v. F. G. MORRIS.

### No. 1688.　Decided May 6, 1896.

**Mandamus—Compelling Trial of Issue—Judicial Discretion—Setting Aside Verdict in Part.**

Plaintiff sued defendants for damages for malicious prosecution and false imprisonment, and the jury found for defendants as to the former issue and for plaintiff as to the latter. The trial judge set aside the verdict and judgment for plaintiff on the issue of false imprisonment, but refused to set aside the verdict for defendants on the issue of malicious prosecution, proposing to retry only the issue as to false imprisonment, and then render one final judgment disposing of both issues. On application by plaintiff for mandamus from the Court of Civil Appeals to compel him to re-try also the issue of malicious prosecution, held (by FISHER, Chief Justice; COLLARD, A. J., concurring, and KEY, A. J., dissenting):

(1) The trial court could only set aside or affirm the verdict as a whole, and his action in setting aside the part as to false imprisonment had the effect of annulling the entire verdict.

(2) The refusal to try again the issue of malicious prosecution after having so vacated the first judgment, was a refusal to proceed to trial and judgment, not involving the exercise of judicial discretion, and the Court of Civil Appeals could, in an original proceeding brought for that purpose, compel the court below to proceed to retry such issue with the other.

(3) The fact that the proceedings of the trial court would be subject to revision on appeal from the final judgment presented no reason for refusing such writ of mandamus.

#### DISSENTING OPINION.

(By KEY, A. J.) The determination of the effect of the order setting aside a. part of the verdict and the proper procedure thereafter was a matter of judicial discretion on the part of the trial judge, which could not be controlled by man damus; and the existence of an adequate remedy by appeal from the final judgment was also sufficient ground for refusing the writ.

#### ON REHEARING.

(By COLLARD, A. J.) The rulings of the majority of the court in the original opinion re-affirmed.

PETITION to the Court of Civil Appeals for mandamus to the Judge of the District Court of Travis County.

This case having been certified to the Supreme Court upon dissent, the certificate was dismissed upon the ground that the Supreme Court had no jurisdiction to review cases of original, not appellate jurisdiction, in the Court of Civil Appeals. Schintz v. Morris, 89 Texas, 648. Defendants in the lower court subsequently applied to the Supreme Court for a writ of mandamus to compel the trial court to enter judgment on the verdict in their favor upon the issue of malicious prosecution, in order to enable them to plead it as a former adjudication upon a second trial. The writ was refused on the ground that the verdict, if entitling them to judgment, would be as available to the petitioners upon such plea as a judgment would. Hume v. Schintz, 90 Texas, 72. Plaintiff subsequently was allowed to take a non-suit in the District Court upon his cause of action, defendants resisting the same and demanding the entry of a judgment on the verdict in their favor upon the

issue of malicious prosecution. On defendant's appeal this judgment was affirmed. Hume v. Schintz, 40 S. W. Rep., 1067.

*R. C. Walker* and *Hogg & Robertson*, for petitioner.—This court has jurisdiction to issue the writ of mandamus to compel a district judge to proceed with the trial of a cause "agreeable to the principles and usages of law." Const., art. 5, sec. 6; Rev. Stats., art. 996 to 1000; Kleiber v. McManus, 66 Texas, 48; Timmins v. Bonner, 58 Texas, 559; Morgan v. Davenport, 60 Texas, 230; Munson v. Hallowell, 26 Texas, 475; Scott v. State, 6 Texas Civ. App., 345; Trigg v. State, 49 Texas, 645; Brothers v. Mundell, 60 Texas, 240; Rowe v. Spencer, 70 Texas, 78; Sutherland on Stat. Const., secs. 255, 6; Endlich on Inter. of Stat., 367-71; 23 Am. & Eng. Ency. of Law, 432-3.

There can be but one final judgment rendered by the District Court in a case, and the effect of the order of the District Court granting defendants a new trial was, to set aside the entire verdict and judgment and give to the plaintiff the right to a re-trial of his cause of action for malicious prosecution, as though no trial had ever occurred. Rev. Stats., art. 1337; Linn v. Arambould, 55 Texas, 611; Long v. Garnett, 45 Texas, 400; Wootters v. Kauffman, 67 Texas, 488; Railway v. James, 73 Texas, 19; Hamilton v. Prescott, 73 Texas, 565; Parker v. Adams, 2 Texas Civ. App., 357; Watkins v. Junker, 4 Texas Civ. App., 629; Johnson v. McCullough, 89 Ind., 270; Morris v. State, 1 Blackf. (Ind.), 37; State v. Templin, 122 Ind., 235; 22 Amer. Law Review, 419; Hilliard on New Trials, 74.

The policy of our law being against a multiplicity of suits and favoring the joining in one suit of all causes of action of like nature, the District Court has no power to sever causes of action.

A new trial having been granted in the entire case, the plaintiff now has the right to trial of his cause of action for malicious prosecution, and this right cannot be denied him by the judge of said court. To deny the plaintiff this right is for the judge to refuse to try a case pending in his court. Rev. Stats., art. 1000; Kleiber v. McManus, 66 Texas, 48; Terrell v. Greene, 88 Texas, 539; Ewing v. Cohen, 63 Texas, 482; Lloyd v. Brinck, 35 Texas, 9; Schultze v. McLeary, 73 Texas, 92.

In view of the record, which shows that the district judge has pronounced three solemn judgments denying petitioner the right to try said issue, and his answer in this cause in which he asserts the correctness of his rulings and urges this court to sustain him in denying a trial of said issue, it cannot be held that this application is premature. State v. Rotwitt, 37 Pac. Rep., 845.

If it be determined that the exercise of this power by this court is original rather than appellate jurisdiction, then the writ of mandamus will issue unless it appear to the court that petitioner has another remedy which is plain, speedy and adequate. Terrell v. Greene, 88 Texas, 539; Arberry v. Beavers, 6 Texas, 457; Screwman's Assn. v. Benson, 76 Texas, 552; Ex parte Alabama Bar Assn., 8 So. Rep., 768; Railway

v. Paull, Judge, 19 S. E. Rep. (W. Va.), 551; State v. Young, 12 So. Rep. (Fla.), 673; Ray v. Wilson, 29 Fla., 342; High on Extra. Legal Rem., secs. 20, 151; Merrill on Mandamus, secs. 51–3, 198–9, and cases cited; Spelling on Extraor. Relief, sec. 1672.

*F. G. Morris*, respondent, in pro. per.—The petition shows that respondent has not refused to proceed to one final judgment in the suit, so that an appeal may be taken, but that plaintiff seeks to control, by mandamus, the course of procedure and rulings by which respondent may arrive at a final judgment, which this court has no jurisdiction to do.    State v. Morris, 86 Texas, 226.

This court cannot anticipate what ruling respondent will make nor assume that respondent will not modify his opinion upon the hearing so as to rule according to law.    State v. Morris, 86 Texas, 226.

Respondent also submitted his written opinion upon the motion for new trial in the court below, showing that his ruling upon his power to grant a new trial upon a part only of the issues was based on the following authorities:    O'Connell v. State, 18 Texas, 343; Shirley v. Railway, 78 Texas, 131; Wells v. Littlefield, 62 Texas, 28; Schuster v. Bowman Jewelry Co., 79 Texas, 179; Tel. Co. v. Hoffman, 80 Texas, 420; Town Co. v. Neale, 78 Cal., 63; Lake v. Lake, 18 Nev., 361; Duff v. Duff, 35 Pac. Rep., 437; Boone v. Hulsey, 71 Texas, 176; Hamilton v. Prescott, 73 Texas, 565; Robbins v. Townsend, 20 Pick., 345; Lisbon v. Lyman, 49 N. H., 553; Albright v. McTighe, 49 Fed. Rep., 817; Sprague v. Childs, 16 Ohio St., 107; Winn v. Ins. Co., 12 Pick., 278; Woodward v. Horst, 10 Iowa, 120; Pratt v. Leather Co., 134 Mass., 300.

In support of a motion for rehearing, respondent urged:

This court has no original jurisdiction of suits for mandamus.    Messner v. Giddings, 65 Texas, 301; McKenzie v. Baker, 88 Texas, 677.

Mandamus does not lie to compel a court to act in advance of the time for it to act, because of its expressed purpose to make a certain ruling.    Spelling on Extraor. Relief, sec. 1385; High on Extraor. Leg. Rem., sec. 12; State v. Rising, 15 Nev., 165; State v. Carney, 3 Kan., 88; Ex rel. Scott v. Board Co. Comrs., 17 Fla., 707; People v. Fitzgerald, 13 N. Y. Supp., 663; Comrs. v. Comrs., 20 Md., 449; 14 Am. and Eng. Ency. of Law, 105, 106; Steele v. Goodrich, 87 Texas, 401.

Where an appeal will lie from the action of the court mandamus does not lie.    Ewing v. Cohen, 63 Texas, 482; State v. Morris, 86 Texas, 226; Steele v. Goodrich, 87 Texas, 401.

Wells v. Littlefield, 62 Texas, 28; Wall v. McConnell, 65 Texas, 397; 67 Texas, 352; Schuster v. Jewelry Co., 79 Texas, 179; Tel. Co. v. Hoffman, 80 Texas, 420; and Shirley v. Railway, 78 Texas, 131, thoroughly establish the proposition that the Supreme Court deems it proper practice to reverse and remand all of a case to a trial court and require it to rest on the former trial and decisions as to certain issues and to retry one or more issues and render final judgment on the whole.

result. There can be no dispute but what the statute limits the power of the Supreme Court to forcing the trial court to do what it ought to have done before the case was taken to the Supreme Court. It must follow that a trial court has the power to do, and ought to have done before allowing the case to go to the Supreme Court, what the Supreme Court directed it to do. This line of reasoning was pursued in Boone v. Hulsey, 71 Texas, 176, by the Supreme Court, to prove that the trial court had the power to sever issues and parties in a case after verdict, grant a new trial as to part, and refuse it as to other issues and parties.

*Walton, Hill & Pendexter* appeared and filed argument on behalf of Hume and Tobin, defendants in the suit in the court below, who intervened.

FISHER, CHIEF JUSTICE.— *Opinion.*—The petitioner, Schintz, in the District Court of Travis County, sued J. L. Hume and W. H. Tobin in damages for libel, slander, false imprisonment and malicious prosecution. The petitioner in that cause states and sets out the facts charging the defendants jointly with the libel, slander, false imprisonment and malicious prosecution, and in the prayer asks for actual damages in one sum and exemplary damages in another stated amount, for all of the alleged wrongs. There is no separate claim for damages for the libel, slander, malicious prosecution or false imprisonment. Upon the trial of the case in the District Court the issues of slander and libel were practically eliminated and, we understand, were in effect abandoned by the plaintiffs, therefore we regard those issues as not before us. The issues of malicious prosecution and false imprisonment were submitted to a jury under the directions and charges of the court, and they returned into court the following verdict: "We the jury find for plaintiff on the charge of false imprisonment and assess the damages at four thousand dollars actual damages and one thousand dollars exemplary damages, against defendants W. H. Tobin and J. L. Hume. We acquit the defendants on the charge of malicious prosecution." This verdict was received by the court, and a final judgment rendered upon that part of it found in favor of the plaintiff; but there was no judgment rendered upon that part of the verdict that was in favor of the defendants on the issue of malicious prosecution, nor was there a judgment rendered against the plaintiff upon that issue; in fact, the judgment is silent as to this phase of the case. During the term in which the trial occurred and the judgment was rendered the defendants, Hume and Tobin, made their motion for a new trial, which was granted by the court. The court, in granting the motion, set aside the verdict and judgment that was against the defendants on the issue of false imprisonment, but refused to disturb and set aside that part of the verdict which found in favor of the defendants on the issue of malicious prosecution, whereupon the plaintiff protested against this course and made a motion to the court that, inasmuch as it had granted a new trial to defendants upon that issue that

was in favor of plaintiff and had set aside the verdict and judgment thereon, the entire verdict should be set aside, so that the plaintiff again, upon another trial, could litigate and try both issues of false imprisonment and malicious prosecution.   The court upon this motion entered an order to the effect that it adhered to its ruling granting the motion for new trial as to the issue of false imprisonment, and refused and declined to set aside the verdict that was in favor of the defendants on the issue of malicious prosecution, and stated, "That a new trial of the cause of action pleaded by plaintiff for false imprisonment alone be and the same is hereby granted," and ordered, "That plaintiffs' motion for new trial on the other issues be and the same is hereby overruled, and that so much of the verdict and rulings of the court prior to the verdict as pertains to the cause of action alleged and tried for malicious prosecution   *   *   * be retained and remain as passed upon by the court and jury, without permitting a new trial on said issues, and without any judgment being now rendered or left in force on said alleged cause of action, to the end that, when the alleged cause of action for false imprisonment shall be tried and determined, one final judgment may be rendered on such determination on the part of the issues heretofore passed on by the court and jury, and which have not been set aside, so that the determination of each and all of the causes of action set up, including those heretofore passed upon and those hereafter to be passed upon as above indicated, may be made the basis of one final judgment in the case."

After the adjournment of the term in which the above proceedings were had and at the present term of the District Court the plaintiff renewed his application and request to the court to permit him to again try the issue of malicious prosecution along with the issue of false imprisonment, which request was refused, and the court adhered to its order as previously made and entered another order in effect the same as the one quoted.   At this point in the progress of the case the plaintiff applied to this court for its writ of mandamus to compel the District Judge of the trial court to permit a trial of the issue of malicious prosecution when the case was again tried upon the issue of false imprisonment.

The jurisdiction of this court is invoked by virtue of section 9 of the Acts of the Legislature at the called session of 1892, organizing the Courts of Civil Appeals.   It provides, "The said courts, or any judge thereof in vacation, may issue the writ of mandamus to compel a judge of the District Court to proceed to trial and judgment in a cause agreeably to the principles and usages of law, returnable on or before the first day of the next term, or during the session of the same, or before any judge of said court, as the nature of the case may require."   A part of section six, article five, of the present Constitution as relates to the creation and jurisdiction of the Courts of Civil Appeals provides that "Said courts shall have such other jurisdiction, original and appellate, as may be prescribed by law."   In placing the Constitution into the present work which is styled the "Revised Statutes of Texas", in keeping with

errors which are generally found in works of that character, those who are responsible for the error failed to state this provision of the Constitution. It is possible, by reason of the authority of Kleiber v. McManus, 66 Texas, 50, that this court would have appellate jurisdiction by mandamus to revise, in some instances, the judicial conduct of a trial court. But, however, this we need not decide, as we are agreed that this court, by reason of the law and Constitution quoted, has original jurisdiction by mandamus to compel a judge of the District Court to proceed to trial and judgment. And it is by virtue of that jurisdiction that we propose to act in the premises.

The questions to be determined are, has the trial judge refused to try a case rightfully pending and undetermined in the District Court, and if so may this court by mandamus control his conduct in this respect, or should the writ be denied upon the ground that the conduct complained of is a matter of judicial discretion which mandamus will not reach, or should it be refused because of other existing remedies by which the error, if any, may be corrected?

The first questions naturally in order are, what is the effect of the orders of the court granting a partial new trial and setting aside the only final judgment rendered upon the verdict and holding over a part of the verdict for judgment to be rendered upon it at some subsequent term. The plaintiff in his petition, in his action against Hume and Tobin, did not, in terms, by separate counts, divide his actions of false imprisonment and malicious prosecution, but he set up the facts upon which he relied as showing that the defendants were guilty of both accusations, and it appears that they are connected by the same state of facts, although those facts upon which is based the malicious prosecution occurred after the term of the alleged false imprisonment. He did not ask damages separately upon each of these causes but, after stating the facts showing the right of action in those two respects, asked for damages in one sum upon this combination of facts showing the several wrongs. The court, in stating the case to the jury in its charge, presented the issues of false imprisonment and malicious prosecution in a way that would authorize the jury to make separate findings upon these issues, and, as observed, the jury found separately upon them. The authority of the court, in view of the case made by the petition, in presenting the issues to the jury so that they may find separately as to the two accusations in the case, and the verdict of the jury in response thereto, and the right of the plaintiff to seek a recovery in one suit upon these two issues in one general claim for damages, or the right to join in one suit these two grounds of recovery, are questions which, in the proceedings before us, we can not pass upon, and about which we intimate no opinion, but we will treat the case as treated by the trial court, as one authorizing the jury to find under proper instructions differently as to the two issues.

There is no express statute in this State that defines the extent a trial court may go in granting a new trial, but we think the question is defi-

nitely settled by the decisions of the courts of this State which have passed upon the question, and also those of some other States. The Supreme Court of Alabama, in Dale v. Moseley, 4 Stewart & Porter, 371, in an opinion by Judge Lipscomb, subsequently of the Supreme Court of this State, held, that after issue and verdict in a case of the right of trial of property in two slaves, the trial court had no authority to sever the plaintiff's case and grant a new trial as to one slave and refuse it as to the other, and concludes that the new trial should have been entire or not at all.

In Converse Harding & Co. v. Bloom, Kahn & Co., 20 La., Ann., 555, it is held that when a judge has made an order in general terms granting a new trial he cannot afterwards and before trial enter the judgment as to one of the parties.

In State ex rel. Downard v. Templin, 122 Ind., 235, it was held that a new trial as to a part of verdict has the effect of setting aside the entire verdict. To same effect is Johnson v. McCulloch, 89 Ind., 270.

In San Antonio v. Dickman, 34 Texas, 650, it is said, that granting a new trial has the effect to reinstate the cause on the docket as though there had been no trial, and that a court has no authority at a subsequent term to set aside an order of a previous term granting a motion for new trial.

In Wootters v. Kauffman, 67 Texas, 497, it is said that a new trial as to one party is a new trial as to all, citing Long v. Garnett, 45 Texas, 400, for this ruling, and saying that continuing the case as to one defendant is a continuance as to the others although the court may attempt to render final judgment against the latter, citing on this point Martin v. Crow, 28 Texas, 614. The case reported in 45 Texas, 401, decides that the order of the court granting a new trial as to some of the defendants has the effect of vacating the entire judgment and that it would not support an execution.

Hamilton & Co. v. Prescott, 73 Texas, 566, holds that the general rule is, that where the trial court sets aside a judgment as to one party it is set aside as to all, whether the order be so expressed or not.

In Railway v. James, 73 Texas, 18, the appellant pleaded a former judgment rendered in the case, in bar of plaintiff's action. A demurrer was sustained to the plea, and the court in passing upon it said: "At a previous trial a verdict had been rendered in favor of the plaintiff against defendant Snyder, and finding appellant and defendant Spillman not guilty. Upon that verdict judgment was entered in their favor that plaintiff take nothing by his suit, and they were discharged with their costs. The judgment was set aside and a new trial granted upon motion of the defendant Snyder alone. Upon this trial it was pleaded in bar of plaintiff's right to recover from appellant. The effect of the order granting a new trial on the motion of defendant Snyder, who was with appellant and Spillman jointly and severally sued, was to vacate the former judgment, and it operated as a new trial as to all the defend-

ants. Long v. Garnett, 45 Texas, 401; Wootters v. Kauffman, 67 Texas, 488."

In Parker v. Adams, 2 Texas Civ. App., 357 (23 S. W. Rep., 902), a tract of land was sued for and verdict was in favor of plaintiff as to some of the defendants and against plaintiff as to other defendants, upon which verdict judgment was accordingly rendered, a motion for new trial filed by plaintiff was overruled as to some of the defendants who recovered against the plaintiff and sustained and granted as to the rest of the defendants. It was held that this had the effect of granting a new trial as to all of the defendants, and that the case stood on the docket as if there had been no trial.

In Linn v. Arambould, 55 Texas, 615, the trial court granted a motion for new trial as to an issue which was a part of the case and overruled the motion as to the remaining issues in the case, and as to these issues entered an order to the effect that they would be held over and retained by the court for the purpose of entering final judgment thereon when the issue that was covered by the order granting new trial was finally disposed of. The court held that this was no final judgment or disposition of the case and expressed the opinion that such a procedure was unauthorized and that a new trial should be had of the entire case.

The effect of these decisions is that a new trial as to a part of a case by operation of law opens up the entire case, and it then stands upon the docket as if no trial was had. The order of the court setting aside the only judgment that was rendered upon the verdict had the effect of destroying the life of the verdict for all purposes.

We know of no law or practice in this State except in judgments by default, and then a statute regulates the matter, that authorizes a trial court to hold over and retain a part of a verdict upon which no judgment has been rendered in order to render a final judgment upon it after the term at some indefinite time in the future. The fact that this part of the verdict was upon a branch of the case which may have been prosecuted by the plaintiff in a suit separate from that phase of the case upon which a judgment was rendered and set aside does not militate against the force of the cases cited and the rule we state. If the plaintiff had the right to combine in one suit these two causes of action against the defendants —a question which we do not now decide—he had the right to have them disposed of in one trial. This is the theory of our practice upon this subject, and parties ought not to be lightly deprived of this right. There is much wisdom in this rule, for otherwise cases may arise in which the rights of the parties as originating in one suit may be scattered by interlocutory orders of the trial court retaining a part of a verdict through many terms of the court, thereby creating much uncertainty and expense. Suppose a case in which a plaintiff may join in one suit against the defendant many claims which under the law may all be placed into one suit, or which at the election of the plaintiff may have been separately sued upon, such for instance as many promissory notes for different sums executed by the defendant, or other claims of the same

nature, if the rule adopted by the trial court in this case was the law he could cut the verdict up into as many parcels as there were claims and could grant a new trial as to all claims but one, holding that over for judgment to be rendered at some subsequent term, and could continue this process of holding out one claim as often as there was a trial until he finally had them all disposed of to his satisfaction, and after many terms terminate the process by the grand finale of a judgment.

Among other reasons which may be advanced why the trial court should dispose of the issues in one trial, and not hold out a part of the case to be determined in other trials, is that the law contemplates that the judgment should be rendered at the term in which the case is tried. March v. Huyter, 50 Texas, 250, and Camoron v. Thurmond, 56 Texas, 26. In this latter case it is held that the rules upon this subject were made to be observed, and the error in rendering judgment at a term other than the trial was the ground upon which the case was reversed. The present rules are similar to those passed upon in that case. If the court parcels out the issues or claims set up by the plaintiff and tries each at different times and holds over the verdict thereon in order to be entered finally into a general judgment, the effect would be one judgment upon many trials, and the benefits of the rule that requires the judgment to be rendered at the term in which the trial occurred would be practically denied. We can illustrate this by reference to the law that grants the right of appeal and regulates the procedure in such cases. The law requires that the party desiring to appeal may only do so from a final judgment after notice of appeal, and that he shall prepare his record looking to that purpose during the term in which the trial occurred, with the privilege of making up a statement of facts within ten days after the term of trial; upon each separate claim of the plaintiff which the court would try at different terms and upon which no judgment at that term was rendered, from which an appeal could be taken, the unsuccessful party who desired to appeal would be required to make up his record for that term, and finally, when the case reached this court from the judgment that was finally rendered, the novel spectacle would be presented of an appeal from one judgment based upon as many different statements of facts and separate records as there were separate trials.

Further, the law contemplates that motions for new trials should be made and acted upon during the term in which the case was tried, and in order to raise many questions in appeal they have to be predicated upon a previous motion made in the trial court seeking a correction of the error there; some of the errors sought to be revised, and which should be corrected may not arise until the court carries them into a judgment which, according to the course pursued in this case, would not probably occur until some subsequent term of the court. The query is suggested—would the matters that occurred in the previous trial, maybe many terms back, upon an issue which the court retained and did

not subsequently try, be raised after this lapse of time and terms of court?

These observations are sufficient probably to show the importance of the rule that requires judgments to be rendered at the term in which the trial occurs, and they probably illustrate some of the difficulties and complications that might occur in the trial and which might arise upon an appeal of the case if the trial court was permitted to grant a new trial as to one issue and retain the verdict upon another upon which judgment would be rendered at some uncertain time and term in the future. Such a practice has nothing to commend it, and much to condemn it, and in the light of the authorities upon the subject is unauthorized. The reasons for the rule that permits in some instances the Supreme Court and Courts of Civil Appeals to reverse a case in part and affirm in part, or to remand on certain issues, are not altogether applicable to trial courts (Hamilton v. Prescott, 73 Texas, 566), except possibly in rare instances, such as was the case in Boone v. Hulsey, 71 Texas, 183, which was in the main put upon the ground that when different defendants claimed separate parcels of land separate judgments may be rendered against each. But, it is apprehended, if issues embraced in the plaintiff's petition could in that case have been held based upon separable controversies, in the sense of setting up causes of action which may have been prosecuted in separate suits but which may be combined in one action, for all of which all of the defendants may have been liable, that the Supreme Court would have held differently. And such a case would have more nearly approximated the one we have before us than did the case considered in Boone v. Hulsey. But the rule announced in Boone v. Hulsey (which the court in Hamilton v. Prescott, supra, states is an exception to the general rule) and other similar cases, which hold that, as to separable controversies set up by the plaintiff as to different parties, separate judgments which were rendered thereon were valid, has no application to the question we are considering, because here the court has never rendered a judgment upon the issue it withholds from trial, and it has nothing to support it but the verdict of the jury, with a promise to, some time in the future, render judgment upon it. With this view of the question we need not decide whether a judgment which was not set aside, rendered upon the issue of malicious prosecution, would have been valid although the court set aside the verdict and judgment on the other branch of the case, for, as shown, this was not done, as no such judgment was ever rendered; and holding, as we do, that the court, without judgment, had no authority to hold over a part of the verdict after granting a new trial as to another part, relieves us of the necessity of deciding this question.

The argument may be made, that, as the order of the court in retaining a part of the verdict shows that it intends to render judgment thereon when the issue upon which the new trial was granted is finally disposed of, such judgment when then rendered will be a trial and disposition of this issue as well as the entire case, and therefore the court,

in law, has not refused a trial and is proceeding with the case, and the statute that authorizes this court by mandamus to require the District Court to try a case does not apply. This argument is plausible but is not sound. The statute under which we are proceeding in express terms authorizes this court to compel a judge of the District Court to proceed to trial and judgment. A trial in the general sense and meaning of the law in which that term is used embraces not only the rendition of judgment, but includes a hearing of some sort "agreeable to the principles and usages of law."

A law that provides for trials under the Constitution and laws of the land is for the benefit of all citizens, and by the law of the land is meant the general law, a law which hears before it condemns, which proceeds upon inquiry and renders judgment only after trial. This embraces presenting the issues by pleading and a hearing in a forum with jurisdiction. These are steps to be taken in a trial and if denied are as much the deprivation of a right which the statute under which we are operating declares we may require at the hands of the trial court as would be the case if the trial court arbitrarily after the trial refused to render judgment. The cause, in some manner known to legal procedure, must be put in issue, and the judgments to be rendered must be based upon pleadings and the actions so in issue. 1 Black, Judgments, secs. 183–184. If we are correct in our ruling that the effect of the order granting the motion for new trial as to a part of the case and setting aside the judgment upon that branch of the case was to open up the entire case and leave it upon the docket as if never tried, it logically follows that the court must retry the entire case, and, from what has been said, simply the entry of a judgment is not a trial within the meaning of the law that authorizes this court to compel the lower court to try. In this connection it is proper to consider the contention of the respondent to the effect that, while the orders entered show that the court then determined that it would not again try the issue of malicious prosecution, it may change its purpose when the case is called for trial, and set aside its order as to this branch of the case and try it along with the other branch of the case, and that for this reason mandamus should not issue. In reply it may be said that the respondent, in his answer, does not evince a purpose to pursue this course, but steadily contends that the orders entered are proper and, correct, and adheres to a view of the law which he urges in justification of the course he has pursued. In ascertaining the purpose of a court when exercising judicial functions and in giving effect to its conduct we must necessarily look to the orders which it has officially entered and the rulings which it has made in the course of the judicial inquiry. If the orders of the court in this instance mean anything they, in no uncertain terms, express a purpose not to again try this issue. When the court in an official way has so expressed its purpose we may presume that it will do what it has solemnly decreed its purpose to do, and may act upon the present state of the case as made by the record (State v. Rotwitt, 37 Pac. Rep., 845),

and will not assume that the court will fluctuate in its opinions and play at shuttlecock with its decisions.

Therefore the only fair conclusion is that the trial court will not again try the issue of malicious prosecution unless persuaded thereto by the mandate of this court.

The next question in order is, how far this court, in a proceeding of this character, may go in inquiry into and controlling the judicial conduct of a trial judge. There can be no question as to the want of power in this court, in a proceeding of this character, to revise the judicial discretion of the trial court as to the time and character of trial and the judgment it may render, but the power of this court to determine what is a trial and what is a judgment and if the trial court has by reason of judicial construction denied either, is not wanting. The statute that authorizes this court to issue its mandamus to compel a trial and judgment, by necessary implication confers the power upon the court to determine what is a trial and what is a judgment and what amounts to a refusal of either. The assertion that, as the trial court has the power to try and render judgment, this confers upon it the judicial discretion to determine what is a trial and what is a judgment, which cannot be controlled by mandamus, is a doctrine which if admitted would defeat the plain purpose of the statute, which confers jurisdiction upon this court to require district courts to try and proceed to judgment, and would in effect deny the right by mandamus to control the act of courts in any matter, as all courts which are vested with the authority to try and hear a cause are confessedly acting in the exercise of judicial functions which they ascertain by some process of construction of the laws under which they claim to act. But, as is apparent from the number of instances shown in the following authorities, the courts which exercise jurisdiction over the inferior tribunals have never felt themselves lacking in power to determine if the trial court has exceeded its authority or has declined to act when it should act, although such courts have judicially determined the questions contrary to the views expressed by the courts that issue their mandatory writs.

But independent of this view, if the ruling that the new trial opened up the entire case and had the effect of setting aside the entire verdict is correct, then the duty of the trial court becomes certain and plain and the right to another trial in some form cannot be denied, and the court can exercise no judicial discretion in the matter of allowing a trial, as his duty to do so is purely ministerial. If there was only one issue in this case and the court had granted a new trial as to it and afterwards without authority of law refused to again try it, there could be no question about the duty of the trial court in such a case and about the power of this court to require it to proceed to trial. The same principle applies in the case before us. The case stands with two issues in it which under the law the court has granted a new trial of. The effect of this new trial is to leave both issues undisposed of and remaining in the case, and so long as they so remain the court would have as much

authority under the law to refuse again to try either as it would both. It is the refusal to try that gives this court jurisdiction, and when we have ascertained that the court has so refused we should not hesitate to compel it to perform the plain duty about which there is little room for the exercise of judicial discretion.

The time and the manner of trial and character of judgment to be rendered are matters confided to the judicial discretion of the trial court, which we will not in this character of proceeding control. But the refusal to act, the refusal to try, are the facts under the statute that call into life the authority of this court to compel the lower court to act, and in order to ascertain if such court has refused to try we must necessarily be clothed with the authority to judicially determine what is and what is not a trial and what amounts to a refusal to try, otherwise the jurisdiction conferred upon these courts in these instances would be a naked power, not clothed with the authority to ascertain when it should be exercised. Consequently we repeat that, under the statute, the moment we ascertain that granting the new trial left the case as before trial, together with the refusal of the court to again try it all, we necessarily determine that an instance arose that called for the mandatory order of this court, and this result is reached by the plain letter of the statute that makes it the ministerial duty of the court to try.

The remaining question is, has the petitioner a remedy by appeal or error and is there an adequate remedy other than the mandatory process of this court. What has been previously said as to the effect of the new trial, when considered with the terms of the statute that authorizes this court to require the District Court to proceed to trial, virtually disposes of this question. Considering the case in this aspect it stands as if pending for trial in the court below with a refusal of the judge to try. If the judge refuses to try, the statute authorizes this court to compel him to try, and we need look no further for a remedy or consider whether another may exist, because by the express letter of the law the Legislature in the exercise of its authority has selected and provided a remedy for just such an emergency. And whatever may be the general rule that denies a resort to this remedy if another exists that is applicable to a different state of affairs in other instances, it ought not to govern in a case like this, especially in view of the law that expressly authorizes this remedy.

Mr. High in his work on Extraordinary Legal Remedies, second edition, sec. 150, says: "While, as we shall see, the authorities hold almost without exception that in all matters resting within the jurisdiction of an inferior court and upon which it has acted in a judicial capacity mandamus will not lie to review its proceedings or to revise its rulings, yet if the matters in question are clearly within the powers of the inferior court, but it refuses to exercise its jurisdiction or to entertain the proceedings, the writ will lie to compel the court to act." And again in section 151 he says: "A distinction is recognized between cases where it is sought by mandamus to control the decision of an inferior court

upon the merits of a cause and cases where it has refused to go into the merits of the action upon an erroneous construction of some question of law or practice preliminary to the whole case, and while, as we shall see, the decision of such court upon the merits of the controversy will not be controlled by mandamus, yet if it has erroneously decided some question of law or practice presented as a preliminary objection, and upon such erroneous construction has refused to go into the merits of the case, madamus will compel it to proceed." And again in section 152 the author states that mandamus is the appropriate remedy to set the machinery of the court in motion, and that it is the peculiar province of the writ as a corrective of judicial inaction. These views are supported by the cases cited by the author and especially is the case of People v. Judge of Wayne Co., 1 Mich., 361, in point, where it is held that mandamus will go to compel a court to act, and this irrespective of the question whether the party has, or not, another remedy.

It is possible, if the court at some indefinite term in the future should render the final judgment it has promised to render upon that branch of the case which it withholds from further trial, that the action of the court may be reversed on appeal or writ of error. But the right of trial and the purposes to be accomplished by a trial will, as we have shown, be denied the plaintiff, and his appeal will not afford an adequate remedy which will give him the present relief of a trial of a cause now pending, which he is now at the present time entitled to. There is no appeal from the orders of the court as now existing. If any relief exists by appeal it is remote and is dependent upon a judgment which the court may render at some indefinite time in the future, which judgment in so far as it may affect the issues not again tried will, in accord with the principle stated in Linn v. Arambould, 55 Texas, 611, and similar cases, be unavailing. ·If such remote relief exists it is not adequate in the present emergency. Mr. High, in section 180 of his work previously quoted, says upon this subject: "In the application of the rule the sole test seems to be whether the order of the subordinate court which it is sought to correct is of such a nature as to be the subject of an appeal or other corrective remedy."

Upon the views just expressed as well as those previously discussed we cite the following cases: "While recourse is never had to this writ to control judicial action, it is the usual and generally the only adequate process to compel the discharge of judicial functions. Its mandate is that the judge before whom a cause is pending shall proceed to hear and determine the same, but its use is not warranted to direct what particular judgment shall be rendered." The above is stated in a case in which the Supreme Court of Alabama granted a mandamus to compel a judge to try a case who had declined to do so on the ground that he was disqualified, and it is there held that, if no appeal would lie from the act complained of, a remedy that would force the party to await the rendition of a final judgment and then appeal would be inadequate and

would not meet the emergency. Ex parte Alabama State Bar Association, 12 Law Rep. Ann., 134 (s. c. 8 So. Rep., 769).

In Collard v. Young (Fla.), 19 Law Rep. Ann., 637, a judge held that he was disqualified to hear a case and for this reason refused to try same and entered an order to that effect; it was held that as he was not disqualified mandamus was the proper remedy to require him to proceed to trial, and the opinion the court in reviewing other cases lays down the doctrine that the conclusion of the trial court that it did not have jurisdiction may be revised, and it be required to proceed.

In Ex parte Parker, 120 U. S., 737, mandamus was granted to compel a lower court to reinstate a case that it dismissed and to hear and determine the appeal, the court through Justice Matthews remarking that the "Writ properly lies in cases where the inferior court refuses to take jurisdiction where by law it ought to do so, or where having obtained jurisdiction in a cause it refuses to proceed in the due exercise thereof."

Bayha v. Kansas City Court of Appeals, 97 Mo., 331–2, Law Rep. Ann., 476 (s. c. 10, S. W. Rep., 855), is a well considered case where many authorities are reviewed, which holds that mandamus will go to reinstate a case which has been dismissed contrary to law, and will require the court to dispose of it.

In Hudson v. Parker, 156 U. S., 281, a Judge of the Supreme Court, as a Justice of the Circuit, allowed a writ of error upon the complainant executing a supersedeas bond to be approved by the District Judge. The District Judge refused to approve the bond solely because in his judicial opinion the order of the Justice of the Supreme Court was made without authority of law. It was held that mandamus would lie to compel the judge to obey the order.

In Brown v. Mining Co., 63 N. W. Rep., 1001, it is held that where appeal does not lie from the action complained of and it results in a refusal of the trial court to act, mandamus will go to compel the court to act.

In Wheeling Bridge Co. v. Paull, 19 S. E. Rep., 551, it is held that where a court has jurisdiction and refuses to try, mandamus is the proper remedy to compel it to act.

In Re Hohorst, 150 U. S., 663, the Circuit Court, which had dismissed a suit as to one party, was compelled by mandamus to take jurisdiction as to the party dismissed, and it is intimated that while the question may have been finally passed upon in an appeal of the case, it was not reviewable on appeal at this stage of the case, therefore mandamus would lie.

In Re Pennsylvania Co., 137 U. S., 451, was a case which was removed from a State court to a Circuit Court of the United States. A motion was made in the Circuit Court to remand the case back to the State court. The court granted the order and refused to take jurisdiction of the case and try it. The Supreme Court of the United States said that mandamus would lie in such a case to compel the Circuit Court,

if it had jurisdiction, to try the case, and would be granted upon such refusal to try, and that while the question might be finally revised on appeal, as there was no appeal from the order dismissing, mandamus was the proper remedy.

In Harrington v. Hollow, 111 U. S., 796, it is held that a dismissal of a writ of error was the refusal to hear and decide the cause, and that in such a case mandamus was the remedy to compel the court to hear and proceed to its determination.

In Railway v. Wisnell, 23 Wall., 507, the court dismissed a case and refused to try; it was held that, as no appeal or error was allowed from that order, mandamus was the remedy to compel the court to try.

In Ex parte Schollenberger, 96 U. S., 374, the Circuit Court refused to entertain jurisdiction and try a case, upon a construction of the law which it ruled did not give it jurisdiction. The Supreme Court ruled otherwise and granted a mandamus to compel the court to try the case.

In Ex parte Bradstreet, 7 Peters, 647, the District Judge upon motion dismissed a case for want of jurisdiction because the complaint did not state the amount in controversy. The Supreme Court of the United States, upon passsing upon mandamus to compel the judge to hear and try the case, held, that according to the practice in this kind of cases it was not necessary to the jurisdiction of the court for the complainant to state the amount, that upon trial it could be proven without being pleaded, and that the court wrongfully dismissed the case, and awarded mandamus to compel it to try.

In Beguhl v. Swan, 39 Cal., 411, it is held that when a court refused to try a case, the question whether it rightfully or not refused may be considered, and mandamus may issue to compel it to try.

In State v. Laughlin, 75 Mo., 359, where a court refused to try a case because it was of the opinion it had no jurisdiction, it was held by the Supreme Court of Missouri that whether jurisdiction existed was a question they would examine into, and if it existed mandamus would issue to compel trial—in other words that mandamus will go to compel a court to exercise its judicial functions.

In Water Co. v. Rives, 14 Nev., 433, it is held that when a court upon a mistaken view of the law refuses to try a case on the ground that it has no jurisdiction, mandamus may issue to compel it to try.

In State ex rel Huey v. Cape Girardeau Court of Common Pleas, 73 Mo., 560, mandamus was issued to compel the lower court to try and proceed with the determination of a case which "was dropped from the docket."

In Castello v. St. Louis Circuit Court, 28 Mo., 259, it is held that where an inferior tribunal declines to hear a cause upon what is termed a preliminary objection—as where in a statutory proceeding instituted to contest the election of a sheriff the court refuses to try the case upon the merits but dismisses same and quashes proceedings, on the ground that the contestant had not given the notice required by statute—a mandamus will go from the Supreme Court commanding the inferior court

to reinstate the cause upon its docket and proceed to try same, as such court misconstrued the law in such preliminary matter.

In Ex parte Lowe, 20 Ala., 330, it was held that if an inferior court makes an order which is in plain violation of the legal rights of one of the parties and by virtue of such order refuses to proceed further in the case, mandamus will go to compel it to act.

In Schonhoff v. O'Bryan, 14 S. W. Rep., 933, where a case was stricken from the docket and dismissed without authority of law, it was held that mandamus would lie to compel that it be reinstated on the docket, and the fact that the lower court has acted is no obstacle to the issuance of the writ, and the court says: "Nor would an appeal or writ of error afford any substantial or effectual remedy in a case of this sort. Were an appeal taken in an instance like the present there would be nothing to pass upon, no errors to correct, for no trial had occurred. It is not the intention of the law to permit a cause to be bandied about like a shuttlecock from court to court, without affording a more effective remedy and prompt relief than would be afforded on appeal or writ of error." And in a separate opinion by Barclay, Judge, it seems writ of error or appeal would lie, and the mandamus is put upon the ground that appeal would delay the remedy, consequently not adequate.

In Reagan v. Copeland, 14 S. W. Rep., 1032, the court was asked to reverse a case because the trial judge refused to file a statement of facts. The court seems to admit that the question could be reviewed on appeal, but as there was no assignment of errors raising it refused to decide the question and stated that in such a case mandamus would go to compel the judge to file statement of facts.

In Meinhard v. Stratton, 19 S. W. Rep., 803, the trial judge, by reason of a construction that he placed upon a provision of law relating to the death of a party after judgment, refused to hear and determine a motion for new trial. It was held that mandamus would go to compel him to hear the motion.

In Wells v. Littlefield, 62 Texas, 30, the Supreme Court disposed of a case on appeal by instructing the trial court to render judgment in favor of appellant against appellee, but left open a question to be passed upon by the trial court. The trial court proceeded, upon the return of the case to it, to open up the entire case and to hear it upon another trial. Mandamus was applied for and granted requiring the court to render judgment as instructed by the Supreme Court. It was held that the attempt of the court to exercise a discretion when none was left to it was unauthorized, and that because the matter and action of the court may be reviewed on another appeal did not prevent the Supreme Court in the exercise of its jurisdiction to issue mandamus to compel the trial court to obey its decree.

Terrell v. Greene, 31 S. W. Rep., 632, a recent case by the Supreme Court of this State, was where mandamus was applied for and granted requiring the District Judge to allow the County Attorney to appear and prosecute a civil action pending in his court in which the county of

Tarrant was interested.   By reason of certain constructions placed upon the law by the judge in the performance of judicial functions the trial court held that the County Attorney was not entitled to appear as attorney for the county in the trial of the case.   In effect, the Supreme Court held that if the action of the trial court complained of was subject to be reviewed on appeal the remedy would under the circumstances not be adequate and meet the emergency, and that the legal remedy which existed in favor of the applicant to recover his fees and commissions to which he would be entitled as the attorney for the county would not be a full and complete remedy; and on the point that the granting the writ would control the exercise of the judicial discretion that rested in the trial court to determine the authority of the County Attorney to appear in the case, the Supreme Court in effect held that if there was no authority in the trial court to exercise a discretion in the way ruled, and there was no dispute about the facts, the Supreme Court, in exercising its original jurisdiction, would correct the ruling of the trial court by mandamus; and said: "In the decision of any question of law the judge must exercise his judgment and that the exercise of such judgment is a judicial discretion which cannot be reviewed upon mandamus; therefore the decision of a judge upon the law cannot be reviewed by this writ."   This the court said was the contention of the respondent and in concluding that it was erroneous said: "If this be correct then no wrong which may be done by a district judge in the determination of any legal question can be reviewed."   The court in this case impliedly refused to follow what was said by the Supreme Court on this question in Ewing v. Cohen, 63 Texas, 482.

In Schultze v. McLeary, 73 Texas, 92, where a special judge declined to try a case because he was in doubt as to whether he was legally appointed, a mandamus issued to compel him to try, the Supreme Court holding that his appointment was legal.

In Kleiber v. McManus, 66 Texas, 48, the case was removed to the Circuit Court of the United States and was by that court returned to the State court, which court refused to try the case because it held that it had lost jurisdiction by the removal to the Federal court.   The Supreme Court differed with the lower court in its construction of the law, and granted mandamus compelling it to try.

In Arberry v. Beavers, 6 Texas, 457, it is said that when the law defines with precision what shall be done mandamus will lie to compel it, or that when the act of an officer is an abuse of his discretion it may be considered as a refusal to perform the duty required, and in these instances he may be compelled to act.

In Lloyd v. Brink, 35 Texas, 6, the District Judge on his own motion set aside, for some reason satisfactory to the judge, a verdict, and granted a new trial and refused to render judgment upon that verdict. A mandamus was applied for and granted, commanding the trial court to render judgment.   Objections were urged to the proceeding by mandamus upon the grounds that the case was still pending in the District

Court, and that a remedy existed by appeal or error, and that the action
of the court in granting the new trial was a matter of judicial discretion
and could not be raised by mandamus.   The Supreme Court held that
the District Judge had no authority to set aside the verdict upon which
judgment was rendered and grant a new trial on his own motion, and
that the judicial powers of the court to act in this respect could be only
called into exercise by a party to the judgment.   The court admitted
that the question might be finally preserved and raised in an appeal from
a judgment that might be rendered in another trial, but that such a
remedy may fail to do complete justice between the parties and may be
inadequate.   And on this branch of the case the court said·  "In the
cause at bar we have no reason to reflect upon the motives or intentions
of the court in setting aside the verdict of the jury and believe that the
action of the judge was prompted by a desire to administer strict and
impartial justice, but we are unable to measure the damages which may
arise before another trial could be had.   And if we adopt the proposi-
tion that the District Court has ex-officio unlimited control over every
verdict of the jury then we must admit the possibility that on the next
trial the verdict of the jury and the ruling of the court will be the same
as before, and might continue thus to the total denial of justice.   We
are therefore forced to the conclusion that an appeal on a final judgment
in the case (if such judgment ever be reached) would not be an adequate
legal remedy, and that therefore the party had a right to resort to an-
other and more complete remedy."

The court in this case, in construing a statute similar to the one under
which this court is now acting, to the effect that a mandamus may issue
to compel a judge of the District Court to proceed to trial and judg-
ment, said:  "The remedy sought by the relator in this cause is man-
damus, to compel the District Judge to enter up judgment on the ver-
dict of the jury, found on the trial of his cause in that court.  And we
are of opinion that he is entitled to that remedy.  That a writ of man-
damus will issue to an inferior court to compel the performance of a
certain and positive duty, made mandatory by law, or where the duty
is simply ministerial and involves no judicial discretion, has been de-
cided and settled in nearly every State of the Union, and in the Supreme
Court of the United States, as well as the courts of England.   Tappan
on Mandamus, 154; 7 Cranch, 589; New York Insurance Company v.
Wilson, 8 Pet., 291; State of Ohio v. Todd, 4 Ham. (Ohio), 351, 2 Johns.
Cas., 118; 5 Wend., 132; Commonwealth v. Justice of the Sessions, 9
Mass., 387; 5 Mass., 434; 6 Texas, 465.  But this right is expressly given
by the Constitution of our State (art. 5, secs. 3 and 10) and fully pro-
vided for by our statutes (Pas. Dig., 1579), which enacts:  The said
court, or any judge thereof, in vacation, may issue writs of habeas cor-
pus, mandamus and such other writs as may be necessary to enforce the
jurisdiction of said court, and also to compel a judge of the District
Court to proceed to trial and judgment in a case.   This statute, we
think, settles the question as to the legality of the writ."

In this last case we are not prepared to agree with the court that a trial judge may not in some instances upon his own motion grant a new trial, but we approve the observations of the court upon the general power to issue mandamus to compel the trial court to proceed to act where it refuses to do so by reason of an unwarranted construction of the law under which it is acting or an unwarranted application thereof in a way that brings about the result of a refusal to act when it was clearly its duty to do so. And we further agree with the court in that case in its views upon the inadequacy of the remedy by appeal.

From the views expressed it follows that the mandamus will issue as prayed for to the extent of instructing the trial court to vacate its orders refusing to again try and determine the issue of malicious prosecution and that, when the original case is called for trial, the court will try and dispose of said issue of malicious prosecution along with the other issues in the case, agreeably to the principles and usages of law. As so ordered the writ of mandamus will issue from this court to respondent, F. G. Morris, Judge of the District Court of the 53rd District of Texas. The costs of this proceeding are taxed against the respondent.

COLLARD, ASSOCIATE JUSTICE.—I fully concur in the foregoing opinion and decision of the question presented.

KEY, ASSOCIATE JUSTICE.—I do not concur in all that is said in the above opinion, nor do I agree to the disposition made of the case; and at a future day will file the reasons for my dissent.

KEY, ASSOCIATE JUSTICE.—*Dissenting Opinion.*—Being unable to agree with the other members of the court, as to the disposition to be made of this case, it is proper that I should state the reasons for my non-concurrence.

Whether or not this court has both original and appellate, or only original jurisdiction, I do not regard as material, because whatever be the character of its jurisdiction, it should not grant a writ of mandamus in this proceeding, unless the judge has refused to proceed to trial and judgment, and if granted it would only require him to so proceed.

Nor do I deem it necessary to decide whether or not the District Judge erred in the rulings complained of.

Neither is it material if, as contended by counsel for the plaintiff, the judge in granting half and refusing half of the defendant's motion for a new trial of the entire case, pursued a novel and unusual course, not expected by either side.

Mandamus is not available to restrain, correct, or otherwise control judicial eccentricities, unless they result in injuries for which that writ is the appropriate remedy.

My dissent is based upon two propositions of law, either of which, if correct, is sufficient reason for refusing the mandamus. These propo-

sitions are: (1) that the rulings complained of involve such judicial discretion as should not be controlled by mandamus; and, (2) the plaintiff has another adequate legal remedy, by appeal.

1.    On the first proposition the rule is thus summarized by an approved text writer:    "The fundamental principle underlying the entire jurisdiction by mandamus over the action of inferior courts is, that in all matters resting within the discretion of the inferior tribunal mandamus will not lie to control or interfere with the exercise of such discretion.    And while the jurisdiction of superior common-law courts over courts of inferior powers, by the writ of mandamus, is well established, it is exercised with the utmost caution lest there should be any improper interference with the exercise of the judicial powers of the court below, and it will only be used in such manner as to leave the inferior tribunal untrammeled in the exercise of the discretionary or judicial powers with which it is properly vested by law.    And the rule may be regarded as established by an overflowing current of authority both English and American, that mandamus will not lie to control the exercise of the discretion of inferior courts, and where such courts have acted judicially upon a matter properly presented to them, their decision can not be altered or controlled by mandamus from a superior tribunal.

"And it is important to observe that the rule applies with equal force, regardless of the propriety or impropriety of the action of the inferior court.    It is sufficient that the discretion has been exercised, and whether rightly or wrongly exercised, it can not be questioned by mandamus."    High on Extraordinary Legal Remedies, sec. 156.    This authority is referred to with approval by Chief Justice Willie in Ewing v. Cohen, 63 Texas, 482, where it was held that mandamus would not lie to compel a county court to reinstate a cause appealed from a city court, and dismissed on account of an alleged defective appeal bond and the failure to give notice of appeal; and the Supreme Court held that Cohen was not entitled to a mandamus, although he had no other remedy.    Both the text and the case just cited are referred to in the following language by Mr. Justice Brown in State v. Morris, 86 Texas, 229:    "In Ewing v. Cohen, 63 Texas, 482, Chief Justice Willie, delivering the opinion of the court, quoting from High on Extraordinary Legal Remedies, said:    'Mandamus will not lie to control the exercise of the discretion of inferior courts, and where such courts have acted judicially upon a matter properly presented to them, their decisions can not be altered or controlled by mandamus from a superior court.'    This rule is amply supported by a large number of cases, of which we cite the following:    Little v. Morris, 10 Texas, 263; Sansom v. Mercer, 68 Texas, 492; Commonwealth v. Boone, 82 Ky., 632; State v. McGown, 89 Mo., 156; State v. Smith, 105 Mo., 6; Judges v. The People, 18 Wend., 79; Ex parte Hoyt, 13 Pet., 279; Ex parte Nelson, 1 Cow., 147; The People v. Superior Court, 18 Wend., 575; Ex parte Perry, 102 U, S., 183; Potter v. Todd, 73 Mo., 101."

Justice Brown wrote the opinion in Terrell v. Greene, 88 Texas, 540

(31 S. W. Rep., 632), which the other members of this court regard as overruling or qualifying the doctrine announced in Ewing v. Cohen, supra, but in the Terrell case he did not refer to nor attempt to overrule or qualify the Morris case.    I think the Terrell case is distinguishable from this case.    The action of the District Court in that case, in refus·ing to allow Terrell, the County Attorney, to represent the county in a suit to which the county was a party, did not relate to the merits of the suit, nor in anywise affect the rights of any party to it; but was a ruling on a preliminary and incidental question, raised by one who was in no sense a party to the suit; and, as shown by the opinion, Terrell's right and duty to represent the county was clearly fixed by statute, and he had no other adequate remedy.

In this case the plaintiff, Schintz, embraced in one suit in the District Court both his causes of action; the respondent, as District Judge, called the case for trial, heard the pleadings read, allowed evidence to·be introduced, and submitted both causes of action to a jury, who returned a verdict for the plaintiff on one, and for the defendants on the other; and, according to the plaintiff's contention, the judge, on motion of the defendants, set aside so much of the verdict as was against them, and has refused to set aside the remainder thereof, and proposes, at another term of his court, to allow the parties to retry the issues of fact involved in the action for false imprisonment, as to which he granted the rehearing, but will not allow them to retry the issues of fact involved in the action for malicious prosecution, the branch of the case as to which he refused to grant a rehearing, but proposes, after obtaining another verdict upon the issue of false imprisonment, to render a judgment thereon, and at the same time to render a final judgment, based upon the verdict now in the record, upon the issue of malicious prosecution.    Now, in my opinion, when the case culminates as above stated, the judge will have "proceeded to trial and judgment," within the meaning of the statute, and the plaintiff will be in a position to have whatever errors may have been committed corrected by appeal, and therefore is not entitled to a writ of mandamus.

It may be that when the judge set aside the verdict on the issue of false imprisonment, he vacated and annulled the entire verdict; but such was not his intention; and, in the further progress of the case in·his court, it is his prerogative to decide the status and declare the legal effect of said verdict, or any other part of the record.    And if, in the exercise of his discretion as a judge, he decides that so much of the verdict as relates to the issue of malicious prosecution has not been annulled, and can properly be made the basis of a judgment on that issue, and renders judgment accordingly, will not such action on his part, whether proper or improper, in connection with what has already been done in the case, constitute a trial and a judgment?    It cannot be denied that both causes of action have been once tried by the court and a jury; and although the result of the subsequent ruling of the judge on the defendant's motion for a new trial may have been to annul the entire verdict,

still, if he holds otherwise and proposes to render a judgment on said verdict, I do not think a mandamus should issue to control his discretion and compel him, in deciding whether or not the verdict referred to has settled and concluded the rights of the parties, to substitute the judgment of this court for that judgment which the law contemplates shall flow from his own mind and conscience—his own judgment.

Suppose the judge had granted the last motion made by the plaintiff, asking him to vacate the order refusing to retry the issue of malicious prosecution, and the defendants, Hume and Tobin, had pleaded the former verdict as a bar to the plaintiff's right to recover on said issue, and it was made to appear, to the satisfaction of this court, that the judge would permit the plaintiff to read his pleading and introduce his evidence, and would then instruct the jury that the former verdict was a bar to the action for malicious prosecution, and direct them to return a. verdict for the defendants? Under such circumstances would this court grant a mandatory writ to prevent the court below from pursuing that course? I presume not; because to do so would be to control the judge in the manner of trial. But what substantial difference is there in the case at bar and the case stated? It is true that in the supposed case there would, in form, be a retrial on the facts; but such retrial would be in form only, because it, like the other case, would be controlled by the effect given by the judge to the former verdict, and the result in each would necessarily be the same.

The court below has not refused to exercise jurisdiction over the case. On the contrary, it has exercised jurisdiction and proposes to continue to do so until a final judgment is rendered on all the issues involved. And that is the object which I think the statute authorizing this court to issue mandamus against district judges was intended to accomplish.

2.    But if I am wrong in my views on the first proposition, I am well satisfied that the mandamus should not be granted, because the relator has another adequate legal remedy.

That mandamus is a last resort, and will not be awarded when the law affords any other sufficient mode of redress, is a well settled proposition. It has been repeatedly so ruled in this State. Cullem v. Latimer, 4 Texas, 330; State v. Morris, 86 Texas, 227; Steele v. Goodrich and Wallace, 87 Texas, 401.

By combining the two causes of action in one suit the plaintiff has indicated his willingness to have them both disposed of by one final judgment, as required by statute, and to avail himself of his right to appeal from such final judgment for the correction of errors prejudicial to him. And such being the case, I see no sufficient reason for holding that because no judgment from which an appeal can be prosecuted has yet been rendered, therefore the remedy by appeal is not adequate. If the court had erroneously sustained a demurrer to that part of the petition seeking a recovery for malicious prosecution, the plaintiff could not have appealed and had the ruling on the demurrer revised until after the other issue was tried and a final judgment rendered. And it seems to

me that such remedy by appeal as has been provided by the Legislature as an adequate remedy to correct such an error as this illustration involves, ought to be held an adequate remedy for the errors of which the plaintiff is now complaining.

A judgment based on the verdict in the record, although rendered at a term subsequent to the rendition of the verdict, will not, in my opinion, be absolutely void, but only voidable; and whatever errors may have been committed in reaching such a judgment may be corrected on appeal therefrom.

Opinion delivered May 11, 1896.

### ON MOTION FOR REHEARING.

COLLARD, ASSOCIATE JUSTICE.—After investigation and review of the facts and authorities we have concluded that the motion for a rehearing ought to be refused, and we will summarize briefly our holdings on the issues.

*Opinion.*—1. When the District Judge granted the new trial on the issue of false imprisonment, it had the effect to grant a new trial on the other issue of malicious prosecution, and reopened the entire case as it stood before the trial. If it did not have this effect it had no effect at all. The trial judge thought differently, and in this we think he has fallen into error. He proposes to hold the verdict on the issue of malicious prosecution, which was in favor of defendants, in abeyance and render judgment thereon at some future time when there is a final trial on the other issue, of false imprisonment, and in this way, as he thinks, avoid a violation of the statute prohibiting more than one final judgment in the District Court at the same suit.

When the new trial was granted the verdict was set aside and killed in its entirety and could not be used as the basis of a judgment after a subsequent trial of the court. This proceeding would in effect be the taking of a verdict from the two juries in the same suit to support one judgment, an anomaly in our practice that cannot be upheld. If this procedure could be allowed when there are two counts it could be done in case of any number of counts in the petition, and there could be as many verdicts as counts, running along through as many terms of the court, all taken as the basis of one judgment. Two or more verdicts of different juries to support one judgment would unquestionably be improper.

2. The effect of the acts of the court shown by the record amounts to a refusal to try the case "agreeably to the principles and usages of law."

3. We have no doubt that in such case this court has jurisdiction and it is its duty on application of the party aggrieved to issue the writ of mandamus as ordered herein.

4. The case is not in the attitude it would be in if the court below had sustained a demurrer to that branch of the case claiming damages

for malicious prosecution upon the ground that it could not be joined in the same suit for false imprisonment. The sustaining of such a demurrer would be a trial. As the case stands there has been no trial upon that issue except the one set aside.

We do not pass upon the question as to whether false imprisonment and malicious prosecution could be joined in one action for damages, whether occurring at the same time or growing out of the same transaction, and the acts of the court do not place that issue before us, nor do we think that issue should be considered by us in passing upon the plaintiff's right to mandamus. No such demurrer was sustained. The case stands now as it stood before the trial, with both of those issues to be tried in some form, and in our opinion it is the duty of the court below to try those issues in some way "agreeably to the principles and usages of law."

5. We are quite convinced from the record before us that the honorable trial judge will not change his mind by the time the case is called again in his court and try the whole case; nor do we believe we should consider such a possibility. He has unequivocally refused to recognize the right of such a trial—entered orders refusing it. He has answered in this proceeding denying such a right and since the writ was granted, on motion for a rehearing, he has undertaken to show by a lengthy, forcible and learned argument filed, that he was right in refusing to hear the issue which he contends has been eliminated from the case, thus reaffirming in this court the correctness of the refusal to try the case on the issues as they stand. We should not under the circumstances indulge the presumption that he will change his ruling of his own accord without the writ prayed for.

We are convinced that the facts shown make it our compulsory duty to grant the writ. The motion for rehearing is overruled.

*Overruled.*

KEY, ASSOCIATE JUSTICE.—For reasons heretofore given I dissent.